UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGORY PURULESKI,

        Plaintiff,

v.

DELRAY CAPITAL, LLC, COOPER FINANCIAL,
LLC, MARK WENDELL GRAY, SULLIVAN
ASSET MANAGEMENT, LLC, JOSHUA J.
SULLIVAN, GERALDINE ANGELO,
NAM NATIONAL ARBITRATION AND MEDIATION,
LLC, ADR ARBITRATION, LLC,  ADR ARBITRATION
SERVICES, LLC, and NICHOLAS A. FIUTKO,

        Defendants.

_____/

COMPLAINT

## I.    Introduction

1.    This is an action for damages brought against debt collectors for violating the

Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, Michigan Collection

Practices Act ("MCPA"), M.C.L.§ 445.251 *et seq.,* and Michigan Occupational Code ("MOC")

M.C.L. § 339.901 *et seq.*

2.    Defendants, along with other entities to be identified in discovery, are involved in

a fraudulent, criminal and ongoing scheme whereby they extort the payment of money from

consumers across the country who allegedly have failed to repay payday loans.  Defendants as

well as many other entities located in and around Buffalo, New York and elsewhere are involved

in ongoing criminal schemes to collect delinquent payday loans through the use of a script,

1

sometimes known as "The Shakedown" or "The Shake," that includes variations of the following:  The caller calls from a blocked number or uses a spoofed telephone number with the consumer's area code, pretends to be a local process server, states to the consumer that "charges" have been filed against the consumer for "defrauding a financial institution" and otherwise represents that the consumer has committed a crime, threatens the consumer with incarceration, and suggests that the charges might not be pursued if the consumer calls a toll free number in the next several hours and arranges to pay money to the fake process server's "client" (which often has a name designed to sound like that of a law firm).  When the consumer responds to the call, the collector (sometimes posing as an attorney) accuses the consumer of having committed a crime, makes false threats of pending litigation and prosecution, and demands payment of the alleged debt.  Often times, the consumer's account will have been sold and resold to multiple parties, such that the caller no longer owns or otherwise has any right to collect the account.

     3.     The use of these unlawful debt collection practices by defendants and other debt collectors is epidemic, as described in the numerous complaints filed over the past several years by the Federal Trade Commission, Consumer Financial Protection Bureau and various state attorneys general in various United States District Courts.

**II.    Jurisdiction**

     4.     This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C. § 1331.  This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28 U.S.C. § 1367.  Venue in this judicial district is proper because the pertinent events took place here.

### III.    Parties

5.     Plaintiff Gregory Puruleski is a natural person residing in Kent County, Michigan. Mr. Puruleski is a "consumer" and "person" as the terms are defined and used in the FDCPA. Mr. Puruleski is a "consumer," "debtor" and "person" as the terms are defined and used in the MCPA and MOC.

6.     Defendant Delray Capital, LLC ("Delray"), is an Ohio limited liability company. In the past, Delray has designated 8070 Beechmont Avenue, Building A, Suite 1, Cincinnati, Ohio 45255 as its principal place of business.  However, Delray also does business from office space located at 150 East Palmetto Park Road, Suite 800, Boca Raton, Florida 33432, with a telephone number of 513-317-9328.  The managing member of Delray is defendant Mark Wendell Gray.  Delray is authorized to transact business in Michigan as a "Debt Purchaser."  The registered agent for Delray in Michigan is InCorp Services, Inc., 2285 South Michigan Road, P.O. Box 266, Eaton Rapids, Michigan 48827.  According to Delray's internet website (www.delraycapitalllc.com), "Delray Capital, LLC specializes in the purchase, resale and liquidation of charged off consumer debt.  The Company purchases defaulted consumer debt, primarily credit cards and consumer loans from lending institutions, resellers or brokers and then liquidates the portfolios that it owns through the outsourcing of the accounts to various collection groups and then through resale."  In 2013 Delray ran multiple advertisements in the Buffalo, New York area, stating in pertinent part, "Delray Capital, a nationally based collection agency is expanding their Buffalo/North towns locations.  25 positions now avail. for collection managers. Highly collectable payday loans. ?Zero agency? - direct from issuer paper."  According to the Better Business Bureau serving Upstate New York, Delray Capital, LLC (716-243-3000) also has

done business at 26 Webster Street, Floor 2, North Tonawanda, New York 14120 and 4535

Southwestern Boulevard, Suite 209, Hamburg, New York 14075.  The BBB, on a scale of A to F,

gives Delray a rating of "F" because of the dozens of complaints filed against Delray alleging

unlawful debt collection practices.  Delray is licensed (No. CCA9903089) by the State of Florida

as a Consumer Collection Agency.  Delray uses interstate commerce and the mails in a business

the principal purpose of which is the collection of debts.  Delray regularly collects or attempts to

collect, directly or indirectly, debts owed or due or asserted to be owed or due another.  Delray is

a "debt collector" as the term is defined and used in the FDCPA.  Delray is a "regulated person"

as the term is defined and used in MCPA.  Alternatively, Delray is a "collection agency" and

"licensee" as the terms are defined and used in MOC.

7.      Delray directly and indirectly participated in the unlawful debt collection practices

to collect an alleged debt from Mr. Puruleski as described in this complaint.

8.      Defendant Cooper Financial, LLC ("Cooper"), is an Ohio limited liability

company.  In the past, Cooper has designated 8070 Beechmont Avenue, Building A, Suite 1,

Cincinnati, Ohio 45255 as its principal place of business.  However, Cooper also does business

from office space located at 150 East Palmetto Park Road, Suite 800, Boca Raton, Florida 33432,

with a telephone number of 513-317-9328.  Other telephone numbers used by Cooper include

561-465-7460, 877-268-8350 and 888-644-3303 (fax).  The managing member of Cooper is

defendant Mark Wendell Gray.  According to an affidavit filed by Mr. Gray in the United States

District Court, Southern District of Ohio, Case No. 1:12-cv-295, "Cooper is in the business of

buying, selling, and collecting through third parties charged off or aged credit card accounts

receivable.  Cooper conducts no collections of its own; it contracts out these services to

collection agencies."  The Better Business Bureau for Cincinnati, Ohio, on a scale of A to F,

gives Cooper a rating of "F" because of the dozens of complaints filed against Cooper alleging unlawful debt collection practices.  Cooper uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.  Cooper regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.  Cooper is a "debt collector" as the term is defined and used in the FDCPA.  Cooper is a "regulated person" as the term is defined and used in MCPA.  Alternatively, Cooper is a "collection agency" and "licensee" as the terms are defined and used in MOC.

9.      Cooper directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Mr. Puruleski as described in this complaint.

10.     Cooper Financial, LLC is the parent company of its wholly owned subsidiary, non-party Elmhurst Receivables, LLC ("Elmhurst").  According to an affidavit filed by defendant Mark Wendell Gray in the United States District Court, Southern District of Ohio, Case No. 1:12-cv-295, Elmhurst is used to purchase delinquent accounts, which then are transferred to Cooper.  According to documents filed by Elmhurst with the State of Illinois, the principal office of Elmhurst is located at 205 East Butterfield Road, Elmhurst, Illinois 60126.  However, that address is nothing more than a private mail box at a UPS store.  Elmhurst is managed by an attorney named Carl Alfred Steinbrenner.  According to Mr. Steinbrenner's internet web site (www.steinbrennerlaw.com), his office is located at 104 Troup Street, Rochester, New York 14608.

11.     Cooper collects and processes the payments that defendants collect from consumers in the course of their unlawful debt collection scheme that is described in this complaint.

5

12.     Defendant Mark Wendell Gray, age 49, is a natural person, purportedly residing at 2373 Clydes Crossing, Cincinnati, Ohio 45244-2800.  Mr. Gray also maintains a residence at 501 Kay Terrace, Boca Raton, Florida 33432-2946, which is the same address at which Mr. Gray has registered his various motor vehicles.  Mr. Gray is an owner and managing member of defendant Delray Capital, LLC.  Mr. Gray is an owner and managing member of defendant Cooper Financial, LLC.  Mr. Gray also is an owner and managing member of non-party Cooper Systems, LLC.  Email addresses used by Mr. Gray include mark.gray@cooperfinancialllc.com and mark.gray@derlaycapitalllc.com.  According to the DBA International website (www.dbainternational.org), Mr. Gray attended national debt buyers conferences in 2010, 2011 and 2012 as managing member of Cooper, and in 2013 as managing member of Delray.  Mr. Gray uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.  Mr. Gray regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.  Mr. Gray is a "debt collector" as the term is defined and used in the FDCPA.  Mr. Gray is a "regulated person" as the term is defined and used in the MCPA.  Alternatively, Mr. Gray is a "collection agency" and  "licensee" as the terms are defined and used in the MOC.

13.     Mr. Gray (a) created the collection policies and procedures used by Delray, Cooper and their employees and agents, (b) managed the daily collection operations of Delray and Cooper, (c) oversaw the application of the collection policies and procedures used by Delray and Cooper and their employees and agents, (d) ratified the unlawful debt collection policies and procedures used by Delray, Cooper, and their employees and agents, as well as the other defendants to this lawsuit, and (e) had knowledge of, approved and ratified the unlawful debt

collection practices used by Delray, Cooper and their employees, as well as the other entities, their employees and their agents named in this complaint, all who participated and acted in concert, to collect an alleged debt from Mr. Puruleski as described in this complaint.

14.     Mr. Gray directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Mr. Puruleski as  described in this complaint.

15.     Defendant Sullivan Asset Management, LLC ("SAM") is a New York limited liability company, claiming to operate at 1967 Wherle Drive, Suite 1, Williamsville, New York 14221 as well as at 25 Northpointe Parkway, Suite 25, Amherst, New York 14228.  According to documents filed by SAM with State of Florida on April 29, 2015, the Managing Member of SAM is defendant Joshua J. Sullivan.  SAM oversees, manages, tracks and facilitates the collection of delinquent consumer debts, mostly payday loans, that are owned by various entities, including defendants Delray and Cooper.  SAM uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.  SAM regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.  SAM is a "debt collector" as the term is defined and used in the FDCPA.  SAM is a "regulated person" as the term is defined and used in MCPA.  Alternatively, SAM is a "collection agency" and "licensee" as the terms are defined and used in MOC.

16.     SAM directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Mr. Puruleski as described in this complaint.

17.     Defendant Joshua J. Sullivan, age 41, is a natural person, purportedly residing at 1410 Billington Road, East Aurora, New York 14052-9451, which is the same address listed for Mr. Sullivan on a State Tax Warrant Release issued by the State of New York on April 22, 2015.

Mr. Sullivan is an owner and managing member of defendant Sullivan Asset Management, LLC. Mr. Sullivan uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.  Mr. Sullivan regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.  Mr. Sullivan is a "debt collector" as the term is defined and used in the FDCPA.  Mr. Sullivan is a "regulated person" as the term is defined and used in the MCPA.  Alternatively, Mr. Sullivan is a "collection agency" and  "licensee" as the terms are defined and used in the MOC.

18.     Mr. Sullivan (a) created the collection policies and procedures used by SAM and its employees and agents, (b) managed the daily collection operations of SAM, (c) oversaw the application of the collection policies and procedures used by SAM and its employees and agents, (d) ratified the unlawful debt collection policies and procedures used by SAM and its employees and agents, as well as the other defendants to this lawsuit, and (e) had knowledge of, approved and ratified the unlawful debt collection practices used by SAM and its employees and agents, as well as the other entities, their employees and their agents named in this complaint, all who participated and acted in concert, to collect an alleged debt from Mr. Puruleski as described in this complaint.

19.     Mr. Sullivan directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Mr. Puruleski as  described in this complaint.

20.     Mr. Sullivan previously collected consumer debts as owner, officer and manager of an entity named Check & Credit Recovery, Inc., which was given a rating of "F" by the Better Business Bureau of Upstate New York for using the same unlawful tactics that are described in this complaint.

21.     Mr. Sullivan also is a member manager of a non-party entity named Featured Mediation, LLC ("FM").  Debts collected by SAM for the benefit of SAM, FM and other entities are sometimes processed through a non-party payment processor named NCW Billing, Inc., pursuant to the terms of various Services Agreements.  However, debt payments collected by SAM and its employees and agents for the benefit of Delray, Cooper and Mr. Gray, are processed through Mr. Gray's own payment processor in the name of Delray.

22.     Defendant Geraldine Angelo, also known as Geraldine DellaPenta Angelo, age 42, is a natural person, purportedly residing at 72 Clark Street, Tonawanda, New York 14150-5206.  Ms. Angelo claims to be the Operations Administrator of defendant Sullivan Asset Management, LLC.  Ms. Angelo uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.  Ms. Angelo regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.  Ms. Angelo is a "debt collector" as the term is defined and used in the FDCPA.  Ms. Angelo is a "regulated person" as the term is defined and used in the MCPA.  Alternatively, Ms. Angelo is a "collection agency" and  "licensee" as the terms are defined and used in the MOC.

23.     Ms. Angelo (a) created the collection policies and procedures used by SAM and its employees and agents, (b) managed the daily collection operations of SAM, (c) oversaw the application of the collection policies and procedures used by SAM and its employees and agents, (d) ratified the unlawful debt collection policies and procedures used by SAM and its employees and agents, as well as the other defendants to this lawsuit, and (e) had knowledge of, approved and ratified the unlawful debt collection practices used by SAM and its employees and agents, as well as the other entities, their employees and their agents named in this complaint, all who

participated and acted in concert, to collect an alleged debt from Mr. Puruleski as described in this complaint.

24.     Ms. Angelo directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Mr. Puruleski as  described in this complaint.

25.     Defendant NAM National Arbitration and Mediation, LLC ("NAM"), is a New York limited liability company which was registered on December 31, 2014.  The registered agent for NAM is defendant Nicholas A. Fiutko, 793 Center Street, Suite 148, Lewiston, New York 14092.  However, that address is merely a rented private mailbox at The UPS Store #6143.  NAM is owned and managed by Mr. Fiutko.  NAM uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.  NAM regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.  NAM is a "debt collector" as the term is defined and used in the FDCPA.  NAM is a "regulated person" as the term is defined and used in MCPA.  Alternatively, NAM is a "collection agency" and "licensee" as the terms are defined and used in MOC.

26.     NAM directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Mr. Puruleski as described in this complaint.

27.     Defendant ADR Arbitration, LLC ("ADRA"), is a New York limited liability company which was registered on March 20, 2014.  The registered agent for ADRA is defendant Nicholas A. Fiutko, 793 Center Street, Suite 168, Lewiston, New York 14092.  However, that address is merely a rented private mailbox at The UPS Store #6143.  ADRA is owned and managed by Mr. Fiutko.  ADRA uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.  ADRA regularly collects or attempts to

collect, directly or indirectly, debts owed or due or asserted to be owed or due another.  ADRA is a "debt collector" as the term is defined and used in the FDCPA.  ADRA is a "regulated person" as the term is defined and used in MCPA.  Alternatively, ADRA is a "collection agency" and "licensee" as the terms are defined and used in MOC.

28.     ADRA directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Mr. Puruleski as described in this complaint.

29.     Defendant ADR Arbitration Services, LLC ("ADRAS"), is a New York limited liability company which was registered on March 20, 2014.  The registered agent for ADRAS is defendant Nicholas A. Fiutko, 793 Center Street, Suite 168, Lewiston, New York 14092.  However, that address is merely a rented private mailbox at The UPS Store #6143.  ADRAS is owned and managed by Mr. Fiutko.  ADRAS uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.  ADRAS regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.  ADRAS is a "debt collector" as the term is defined and used in the FDCPA.  ADRAS is a "regulated person" as the term is defined and used in MCPA.  Alternatively, ADRAS is a "collection agency" and "licensee" as the terms are defined and used in MOC.

30.     ADRAS directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Mr. Puruleski as described in this complaint.

31.     Defendant Nicholas A. Fiutko, age 34, is a natural person, purportedly residing at 6432 John Avenue, Apartment A, Niagara Falls, New York 14304-2247, 454 Onondaga Street, Apartment 1, Lewiston, New York 14092-1203, or 3403 Wildwood Drive, Niagara Falls, New York 14304-1430.  Mr. Fiutko is an owner and managing member of defendants NAM, ADRA

and ADRAS.  Mr. Fiutko uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.  Mr. Fiutko regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.  Mr. Fiutko is a "debt collector" as the term is defined and used in the FDCPA.  Mr. Fiutko is a "regulated person" as the term is defined and used in the MCPA.  Alternatively, Mr. Fiutko is a "collection agency" and  "licensee" as the terms are defined and used in the MOC.

32.	Mr. Fiutko (a) created the collection policies and procedures used by NAM, ADRA and ADRAS and their employees and agents, (b) managed the daily collection operations of NAM, ADRA and ADRAS, (c) oversaw the application of the collection policies and procedures used by NAM, ADRA and ADRAS and their employees and agents, (d) ratified the unlawful debt collection policies and procedures used by NAM, ADRA and ADRAS and their employees and agents, as well as the other defendants to this lawsuit, and (e) had knowledge of, approved and ratified the unlawful debt collection practices used by NAM, ADRA and ADRAS and their employees and agents, as well as the other entities, their employees and their agents named in this complaint, all who participated and acted in concert, to collect an alleged debt from Mr. Puruleski as described in this complaint.

33.	Mr. Fiutko directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Mr. Puruleski as  described in this complaint.

34.	NAM, ADRA, ADRAS and Mr. Fiutko, regularly collect debts using unregistered names in efforts to conceal their true identities.  Those unregistered names include A.D.R. Group and A.D.R. Arbitration Group.  These defendants also maintain an internet domain name, www.theadrgroup.org, which they registered through an entity named whoisproxy.org in order to

conceal their identities.

35.     Upon information and belief, NAM, ADRA, ADRAS and Mr. Fiutko operate their unlawful debt collection scheme from office space they rent at 7510 Porter Road, Suite 12, Niagara Falls, New York 14304.

36.     An entity that itself meets the definition of debt collector is liable for the unlawful collection activities carried out by another debt collector on its behalf.  *See, e.g., Pollice v. Nat'l Tax Funding, L.P.,* 225 F.3d 379, 404 (3rd Cir. 2000).

37.     Delray, Cooper, Mr. Gray, themselves debt collectors, are liable for the unlawful collection activities carried out by debt collectors SAM, Mr. Sullivan, Ms. Angelo, NAM, ADRA, ADRAS and Mr. Fiutko and their employees and agents to collect the alleged debt from Mr. Puruleski as described in this complaint.

38.     SAM, Mr. Sullivan and Ms. Angelo, themselves debt collectors, are liable for the unlawful collection activities carried out by debt collectors NAM, ADRA, ADRAS and Mr. Fiutko and their employees and agents to collect the alleged debt from Mr. Puruleski as described in this complaint.

39.     A shareholder, owner, officer, member, manager, employee or agent of a corporate debt collector can be held liable for violating the FDCPA, without piercing the corporate veil, by being directly involved in the day-to-day operation of the company, including the training and managing of employees, reviewing or supervising the review of accounts, materially participating in the activities of the company, supervising collection activities, overseeing compliance with applicable collection laws, ratifying unlawful acts, and the like, for the reason that each such individual is himself a "debt collector" within the statutory definition,

namely, each is a "person" in a business, "the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  *See Kistner v. Law Offices of Michael P. Margelefsky, LLC,* 518 F.3d 433, 435-438 (6th Cir. 2008); *Russell v. Goldman Roth Acquisitions, LLC,* 847 F.Supp.2d 994, 1004-06 (W.D.Mich. 2012).

**IV.  Facts**

40.     On or about May 22, 2014, Mr. Puruleski obtained a payday loan via the internet from an entity named CashNetUSA, borrowing several hundred dollars, with interest to accrue at an annual rate that exceeded three hundred percent.  CashNetUSA assigned the transaction an original account number of 1534916.  Mr. Puruleski used the borrowed money to obtain goods and/or services for personal, family or household purposes.  Any resulting obligation to pay money was a "debt" as the term is defined and/or used in the FDCPA, MCPA and MOC.

41.     Mr. Puruleski allegedly failed to repay the debt in full.

42.     CashNetUSA charged off the account.

43.     In or about August 2014, CashNetUSA sold the account to an entity named National Credit Adjusters, L.L.C. ("NCA").

44.     In or about March 2015, NCA sold the account to defendants Delray Capital, LLC and Cooper Financial, LLC.

45.     In or after March 2015, Delray, Cooper and defendant Mark Wendell Gray placed the account for collection with defendants Sullivan Asset Management, LLC, Joshua J. Sullivan and Geraldine Angelo.

46.     In or after March 2015, SAM, Mr. Sullivan and Ms. Angelo placed the account

for collection with defendants NAM National Arbitration and Mediation, LLC, ADR Arbitration, LLC, ADR Arbitration Services, LLC and Nicholas A. Fiutko.

47.     In May or June 2015, defendants' employee and agent placed a call to Mr. Puruleski's wife's cellular telephone and left the following message on her voice mail: "Michael Puruleski, you are being contacted to pre-litigation departments at the ADR Arbitration Group regarding two pending financial charges along with an attachment for a wage garnishment that is being filed against your name and social security number ending in 3635. This is slated for prosecution in Kent County Court. I will need your statement of intent, as well as attorney information as to who will be handling these allegations against you. It is imperative we speak as soon as possible. Contact my office at 844-841-0434, extension 112. Refer to your case number, 693-216." Mrs. Puruleski played the message for Mr. Puruleski.

48.     In May or June 2015, defendants' employee and agent placed a call to Mr. Puruleski's wife's cellular telephone and left the following message on her voice mail: "This is the office of ADR Arbitration Group. We are requesting your name and address that's involved with an investigation that requires your immediate attention. We need a return call back from you today so that we can report that you've been cooperative and compliant in this investigation. Our office number is 844-247-1987. Please reference file number 693-216 when calling in. Thank you, and have a good day." Mrs. Puruleski played the message for Mr. Puruleski.

49.     In May or June 2015, defendants' employee and agent placed a call to Mr. Puruleski's wife's cellular telephone and left the following message on her voice mail: "This message is for Gregory Puruleski regarding file number 693-216. This is ADR Arbitration Group. This is a final courtesy call from ADR Arbitration Group before reporting that you have

been uncooperative in the investigation against you. If I do not hear from either yourself, or your legal representation today, we will be left with no recourse other than to report your noncompliance and [END]." Mrs. Puruleski played the message for Mr. Puruleski.

50. On June 11, 2015, Mrs. Puruleski responded to defendants' messages by placing a call to telephone number 844-841-0434. The call was answered by defendants' employee and agent, who identified herself as "Julia" at "ADR Arbitration Group." In the ensuing conversation, defendants' employee and agent made the following representations:

> a) ADR Arbitration Group had been contacted by Flagstar Bank regarding a payday loan obtained by Mr. Puruleski from CashNetUSA, also known as Advance America.

> b) Flagstar Bank had communicated to ADR Arbitration Group that Mr. Puruleski had used his Flagstar Bank account to make fraudulent transactions.

> c) Mr. Puruleski owed more than $800.00 on the unpaid payday loan.

> d) Mr. Puruleski was going to be served with papers to appear in court.

> e) FlagStar Bank was cooperating with ADR Arbitration Group and had authorized ADR Arbitration Group to transfer money from Mr. Puruleski's Flagstar Bank account.

> f) Mr. Puruleski and Mrs. Puruleski were criminals who committed fraud.

> g) Mr. Puruleski and Mrs. Puruleski were going to be jailed.

When Mrs. Puruleski stated that she and Mr. Puruleski were going to retain a lawyer, defendants' employee and agent replied:

h)      "How can you hire a lawyer when you can't pay your bills on time?  You are a criminal who hired a lawyer. . . .  It's funny that anyone would represent you."

i)      "Criminal, do not call back until it's your so-called lawyer calling."

51.    The above-described threats and representations made by defendants' employees and agents were false and part of a **scripted** and unlawful debt collection practice that is ongoing and is currently being perpetrated by defendants to coerce the payment of millions of dollars from thousands of consumers throughout the United States by use of false threats, intimidation, criminal extortion, and unlawful harassment of the consumers and their relatives and other third parties.

52.    The above-described messages and representations left and made by defendants and their agents and/or employees falsely represented and falsely implied that a lawsuit had been filed against Mr. Puruleski.

53.    The above-described messages and representations left and made by defendants and their agents and/or employees falsely represented and falsely implied that a lawsuit would be filed against Mr. Puruleski.

54.    The above-described messages and representations left and made by defendants and their agents and/or employees falsely represented and falsely implied that two criminal charges had been, or were about to be, filed Mr. Puruleski.

55.    The above-described messages and representations left and made by defendants and their agents and/or employees falsely represented and falsely implied that Mr. Puruleski was scheduled to be prosecuted in Kent County, Michigan.

56.    The above-described messages and representations left and made by defendants and their agents and/or employees falsely represented and falsely implied that Mr. Puruleski's wages were going to be garnished.

57.    The above-described messages and representations left and made by defendants and their agents and/or employees falsely represented and falsely implied that Mr. Puruleski was the subject of an ongoing criminal investigation.

58.    The above-described messages and representations left and made by defendants and their agents and/or employees falsely represented and falsely implied that Flagstar Bank had contacted defendants regarding Mr. Puruleski's bank account.

59.    The above-described messages and representations left and made by defendants and their agents and/or employees falsely represented and falsely implied that Flagstar Bank had contacted defendants regarding fraudulent activity involving Mr. Puruleski's bank account.

60.    The above-described messages and representations left and made by defendants and their agents and/or employees falsely represented and falsely implied that Mr. Puruleski was going to be served with papers to appear in court.

61.    The above-described messages and representations left and made by defendants and their agents and/or employees falsely represented and falsely implied that Flagstar Bank had authorized defendants to transfer money from Mr. Puruleski's bank account.

62.    The above-described messages and representations left and made by defendants and their agents and/or employees falsely and wrongfully represented and falsely and wrongfully implied that Mr. Puruleski and Mrs. Puruleski were criminals who committed fraud.

63.    The above-described messages and representations left and made by defendants

and their agents and/or employees falsely and wrongfully represented and falsely and wrongfully implied that Mr. Puruleski and Mrs. Puruleski were going to be incarcerated.

64.     Defendants and their employees and agents misrepresented and concealed their identities in their communications with Mr. Puruleski and Mrs. Puruleski

65.     The above-described messages and representations left and made by defendants and their agents and employees falsely represented and falsely implied that a law firm was involved in the efforts to collect the alleged debt.

66.     The above-described messages and representations left and made by defendants and their agents and employees falsely represented the amount owed by Mr. Puruleski on the account.

67.     Defendants and their employees and agents in the described communications falsely represented and falsely implied to Mr. Puruleski that the State of Michigan would criminally prosecute Mr. Puruleski if she did not pay money to defendants.

68.     Defendants and their employees and agents in the described communications falsely represented and falsely implied to Mr. Puruleski and Mrs. Puruleski that the State of Michigan had commenced proceedings to criminally prosecute Mr. Puruleski.

69.     Defendants did not intend to file a lawsuit against Mr. Puruleski in any Michigan court in efforts to collect the alleged debt.

70.     No defendant has never filed any lawsuit in any Michigan court to collect any debt from any person.

71.     On June 12, 2015, NCA disclosed that NCA had sold Mr. Puruleski's account to Delray in March 2015.

19

72.     On June 12, 2015, SAM through its employee Joe Martinelli disclosed that Delray had placed Mr. Puruleski's account with SAM for collection, that SAM had placed Mr. Puruleski's account with NAM for collection, and that Mr. Puruleski should call NAM to make payment arrangements.

73.     On June 12, 2015, a person named "Julia Stone" at "ADR Arbitration Group" was contacted at 844-841-0434 and a payment in the amount of $100.00 was made on Mr. Puruleski's account by debit card.  Later that same day, the payment was credited to the account of "DELRAY 513-474-1989 OH," which is an account belonging to defendant Delray Capital, LLC.

74.     On June 12, 2015, defendants (from info@theadrgroup.org) emailed to Mr. Puruleski a letter acknowledging receipt of the above-described payment.  A copy of the letter is attached as Exhibit A.

75.     The FDCPA states that it is unlawful for a debt collector to use or threaten to use criminal means to harm the reputation or property of any person. 15 U.S.C. § 1692d(1).

76.     The FDCPA states that it is unlawful for a debt collector to place a telephone call without meaningful disclosure of the caller's identity.  15 U.S.C. § 1692d(6).

77.     The FDCPA states that it is unlawful for a debt collector to falsely represent or falsely imply that the debt collector is vouched for, bonded by, or affiliated with the United States or any State.  15 U.S.C. § 1692e(1).

78.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the character, amount, or legal status of any debt.  15 U.S.C. § 1692e(2)(A).

20

79.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the compensation which may be lawfully received by any debt collector for the collection of any debt.  15 U.S.C. § 1692e(2)(B).

80.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that any individual is an attorney or that any communication is from any attorney.  15 U.S.C. § 1692e(3).

81.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.  15 U.S.C. § 1692e(4).

82.     The FDCPA states that it is unlawful for a debt collector to threaten to take any action that cannot legally be taken or that is not intended to be taken.  15 U.S.C. § 1692e(5).

83.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to lose any claim or defense to the payment of the debt.  15 U.S.C. § 1692e(6)(A).

84.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to become subject to any practice prohibited by the FDCPA.  15 U.S.C. § 1692e(6)(B).

85.     The FDCPA states that it is unlawful for a debt collector to falsely represent or falsely imply that the consumer committed any crime or other conduct in order to disgrace the consumer.  15 U.S.C. § 1692e(7).

86.    The FDCPA states that it is unlawful for a debt collector to communicate or threaten to communicate to any person credit information which is known or which should be known to be false.  15 U.S.C. § 1692e(8).

87.    The FDCPA states that it is unlawful for a debt collector to use any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court of the United States or any State, or which creates a false impression as to its source, authorization, or approval. 15 U.S.C. § 1692e(9).

88.    The FDCPA states that it is unlawful for a debt collector to use any false representation or deceptive means to collect or attempt to collect any debt. 15 U.S.C. § 1692e(10).

89.    The FDCPA states that it is unlawful for a debt collector to fail to disclose in an oral communication with the consumer that the communication is from a debt collector and that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose. 15 U.S.C. § 1692e(11)

90.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that documents are legal process.  15 U.S.C. § 1692e(13).

91.    The FDCPA states that it is unlawful for a debt collector to use any business, company, or organization name other than the true name of the debt collector's business, company, or organization.  15 U.S.C. § 1692e(14).

92.    The FDCPA states that it is unlawful for a debt collector to use unfair or unconscionable means to collect or attempt to collect any debt.  15 U.S.C. § 1692f.

93.    The FDCPA states that it is unlawful for a debt collector to collect any amount

unless such amount is expressly authorized by the agreement creating the debt or permitted by law.  15 U.S.C. § 1692f(1).

94.      Defendants have violated the FDCPA, 15 U.S.C. §§ 1692d(1) and (6), 1692e(1), (2)(A), (2)(B), (3), (4), (5), (6)(A), (6)(B), (7), (8), (9), (10), (11), (13) and (14), and 1692f and 1692f(1).

95.      Defendants and their employees and agents falsely accused Mr. Puruleski of having committing a crime.  Mr. Puruleski's refusal to pay the alleged debt was not a crime under Michigan law because the Michigan Deferred Presentment Service Transactions Act, which regulates payday lending in Michigan, expressly states that the borrower in a payday loan transaction "is not subject to any criminal penalty in the event the drawer's check is dishonored." M.C.L. § 487.2158(4).

96.      Morever, M.C.L. § 750.213 states in pertinent part:

Sec. 213.  MALICIOUS THREATS TO EXTORT MONEY – Any person who shall, either orally or by a written or printed communication, maliciously threaten to accuse another of any crime or offense . . .  with intent to extort money or any pecuniary advantage whatever . . . shall be guilty of a felony, punishable by imprisonment in the state prison not more than 20 years or by a fine of not more than 10,000 dollars.

Collection of a valid, enforceable debt does not permit malicious threats of injury if payment is not made.  *People v. Maranian*, 359 Mich. 361 (1960).

97.      Defendants and their employees and agents criminally extorted money from Mr. Puruleski and violated M.C.L. § 750.213.

98.      Defendants and their employees and agents failed to timely send to Mr. Puruleski

23

a notice containing the information required by 15 U.S.C. § 1692g(a).

99.     Each defendant and each defendant's employees, managers, owners, agents, attorneys, affiliates and co-conspirators had knowledge of, approved of, and ratified the use of the scripts and other unlawful debt collection practices that are described in this complaint.

100.     Defendants and their employees, managers, owners, agents, attorneys, affiliates and co-conspirators each have intentionally and wilfully violated the FDCPA, MRCPA and MOC.

101.     The FDCPA states in part, "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged."  15 U.S.C. § 1692(e).

102.     Defendants and their employees, managers, owners, agents, attorneys, affiliates and co-conspirators, to increase their business and profits, have knowingly chosen to use debt collection practices that violate the FDCPA and Michigan law, to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

103.     As an actual and proximate result of the acts and omissions of defendants and their employees, managers, owners, agents, affiliates and co-conspirators, plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, anxiety, loss of sleep, and suffering, for which he should be compensated in an amount to be established by jury and at trial.

**V.   Claims for Relief**

### Count 1 – Fair Debt Collection Practices Act

104.   Plaintiff incorporates the foregoing paragraphs by reference.

105.   Each defendant has violated the FDCPA.  Each defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

a)   Defendants violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

b)   Defendants violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt;

c)   Defendants violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff; and

d)   Defendants violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)   Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)   Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)   Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)   Such further relief as the court deems just and proper.

### Count 2 – Michigan Regulation of Collection Practices Act

106.   Plaintiff incorporates the foregoing paragraphs by reference.

107.   Each defendant has violated the MRCPA.  Each defendant's violations of the

MRCPA include, but are not necessarily limited to, the following:

a) Defendants violated M.C.L. § 445.252(a) by communicating with a debtor in a misleading or deceptive matter, including simulated judicial process;

b) Defendants violated M.C.L. § 445.252(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

c) Defendants violated M.C.L. § 445.252(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

d) Defendants violated M.C.L. § 445.252(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened, (ii) the legal rights of a creditor or debtor, and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, or sale of the debtor's property;

e) Defendants violated M.C.L. § 445.252(g) by communicating with a debtor without accurately disclosing the caller's identity;

f) Defendants violated M.C.L. § 445.252(n) by using a harassing, oppressive, or abusive method to collect a debt; and

g) Defendants violated M.C.L. § 445.252(q) by failing to implement a procedure designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendants for:

a) Actual damages pursuant to M.C.L. § 445.257(2);

b) Treble the actual damages pursuant to M.C.L. § 445.257(2);

c) Statutory damages pursuant to M.C.L. § 445.257(2);

d)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 445.257(2); and

e)      Equitable relief pursuant to M.C.L. § 445.257(1).

### Count 3 – Michigan Occupational Code

108.    Plaintiff incorporates the foregoing paragraphs by reference.

109.    Each defendant has violated the MOC.  Each defendant's violations of the MOC include, but are not necessarily limited to, the following:

a)      Defendants violated M.C.L. § 339.915(a) by communicating with a debtor in a misleading or deceptive matter, including simulated judicial process;

b)      Defendants violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

c)      Defendants violated M.C.L. § 339.915(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

d)      Defendants violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened; (ii) the legal rights of a creditor or debtor; and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, attachment or sale of the debtor's property;

e)      Defendants violated M.C.L. § 339.915(g) by communicating with a debtor without accurately disclosing the caller's identity;

f)      Defendants violated M.C.L. § 339.915(n) by using a harassing, oppressive, or abusive method to collect a debt;

g)      Defendants violated M.C.L. § 339.915(q) by failing to implement a procedure

designed to prevent a violation by an employee; and

h)      Defendants violated M.C.L. § 339.918.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages pursuant to M.C.L. § 339.916;

b)      Treble the actual damages pursuant to M.C.L. § 339.916;

c)      Statutory damages pursuant to M.C.L. § 339.916;

d)      Equitable relief pursuant to M.C.L. § 339.916; and

e)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

### Demand for Trial by Jury

Plaintiff demands trial by jury.

Dated: June 23, 2015

/s/ Phillip C. Rogers
Phillip C. Rogers (P34356)
Attorney for Plaintiff
40 Pearl Street, N.W., Suite 336
Grand Rapids, Michigan 49503-3026
(616) 776-1176
ConsumerLawyer@aol.com